**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | |
|---|---|
| FREDERICK M. ZOSS,<br><br>    Plaintiff,<br>v.<br><br>GREG PROTSCH and<br>MUMFORD & PROTSCH, LLP,<br><br>    Defendants. | Civ No.: 4:20-cv-04211-LLP<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**NON-ECONOMIC DAMAGES ARE NOT RECOVERABLE** |

Defendants Greg Protsch and Mumford & Protsch, LLC, by and through their attorneys Quintairos, Prieto, Wood & Boyer, P.A., respectfully move for summary judgment pursuant to Fed. R. Civ. P. 56(b) on Plaintiff Fredrick M. Zoss' claimed damages for non-economic damages on the basis that such damages are not reasonably foreseeable and therefore not recoverable in a legal malpractice action such as this. In support of their motion, Defendants state the following:

## I.   STATEMENT OF THE CASE.

This legal malpractice suit arises out of Plaintiff's sale of cattle to a non-party and *subsequent* consultation with Mr. Protsch seeking legal advice relating to the already-completed sale. Beginning December 8, 2017, Plaintiff ran an advertisement offering to sell his "cattle herd on a contract for deed" in the farm forum. (Discovery responses, attached as <u>Exhibit A</u>, No. 5). Mr. Knutson contacted Plaintiff in response to that ad. *Id.* Plaintiff and Mr. Knutson entered into a binding agreement on the terms for the sale of Plaintiff's cattle to Mr. Knutson. Plaintiff then delivered all his cattle to Mr. Knutson, a process that began December 20, 2017 and finished on

December 23, 2017.  (*Id.*, No. 6).  In exchange, Plaintiff accepted a check in amount of $30,000, representing the first payment under the agreement between Plaintiff and Mr. Knutson.

Only after Plaintiff delivered possession and control of the subject cattle to Mr. Knutson, and only after those cattle became subject to the security agreement between Mr. Knutson and his credit union, and only after Plaintiff accepted the $30,000 check from Mr. Knutson did Plaintiff contact Mr. Protsch for legal advice relative to the transaction.  (*Id.*, No. 7).  When Plaintiff told Mr. Protsch that he "had sold [his] cattle on contract for deed to a buyer from Oakes, ND," Mr. Protsch "told [Plaintiff] that [he] should not have done that."  (*Id.*, No. 10).  As a matter of law, once the cattle came into Mr. Knutson's possession and control, they would automatically become subject to any after-acquired-property UCC filing Mr. Knutson might have in place with an existing lender and could be sold to an unscrupulous buyer.

Faced with a client who entered into an ill-considered contract that could not be revoked based upon factual circumstances involving a third-party's interest, Mr. Protsch did what he could in the situation to best protect his client's interests: he prepared a promissory note, security agreement, and installment payment cattle purchase contract.  The after-drafted purchase contract stated that Mr. Knutson would execute a security agreement to effectuate a purchase money security interest in the cattle, which he did.  After consulting with a North Dakota attorney, Mr. Protsch filed UCC filing statements in the cattle on behalf of Plaintiff, but nothing he did could impair the seniority of an existing lien.  Thus, when Mr. Knutson became insolvent, his senior lien holder, Town & Country Credit Union, foreclosed on the few cattle that were still alive and in Mr. Knutson's possession.

Plaintiff refuses to acknowledge that his decision to sell his cattle herd without even consulting an attorney or competent business professional was the cause of his misfortune and is looking for someone else to blame. He then brought this lawsuit against Defendants for malpractice and breach of fiduciary duty (collectively "legal malpractice"), claiming that Mr. Protsch should have advised him to breach his agreement with Mr. Knutson and then attempt to retake possession of the cattle, despite there being no legal basis for such action.

Plaintiff's first claim for malpractice alleges Defendants failed "to provide competent legal advice that would cause the sale of livestock to be properly allocated to the Plaintiff in a timely manner." [Doc. 1 at ¶ 32]. Plaintiff's second claim for breach of fiduciary duty alleges "Defendants owed Plaintiff fiduciary duties leading up to the Cattle Sale" and breached those duties by "failing to advise Plaintiff regarding sale of cattle under the UCC or by failing to advise Plaintiff that they had potentially committed malpractice." *Id.* ¶¶ 33-34. In the Complaint, Plaintiff requests all available compensatory damages; costs and disbursements; and any other future relief the Court deems necessary." *Id.* ¶ 34. In response to Defendants' eighteenth interrogatory, Plaintiff claims he has suffered emotional distress damages, over and above his claimed economic damages.

Legal malpractice, under the facts here, cannot be the proximate cause of emotional distress, and courts therefore refuse to permit emotional distress actions in legal malpractice or breach of fiduciary duty cases like this one. Defendants now move for summary judgment on the ground that Plaintiff cannot, as a matter of law, recover emotional distress damages. Only in very different circumstances, such as when legal malpractice results in loss of liberty, when an attorney knowingly and purposely releasing confidential attorney-client privileged documents to a prosecutor, or when an attorney counsels a client to lie to the government, resulting in a loss of

immigration status, have courts found emotional distress damages were reasonably foreseeable and recoverable as the proximately caused result of the complained of act. Critically, Plaintiff has not plead a claim for intentional or negligent infliction of emotional distress and have neither plead nor alleged he manifested physical symptoms associated with any emotional distress. Plaintiff's claims are based on drafting documents to memorialize an existing agreement and are not of a character where the wrong alleged could be the proximate cause of any emotional distress. Nothing in this case justifies departure from the rule that emotional distress damages are not recoverable in a legal malpractice action because they cannot be proximately caused by the kind of wrongs asserted in such actions, even if this Court were to predict that South Dakota courts would follow any of the narrow exceptions created in other jurisdictions finding that specific types of wrongs by attorneys can proximately cause emotional distress.[1]

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS.

1.  Plaintiff, in an advertisement running from December 8, 2017 though the end of that year in the farm forum, advertised "100 registered angus cows and 22 replacement heifers" for sale, stating he would consider contract for deed. (Ex. A, No. 5).

---

[1] To prevail in a legal malpractice action, the plaintiff must prove:
   1. An attorney-client relationship giving rise to a duty;
   2. the attorney, either by an act or a failure to act, violated or breached that duty;
   3. the attorney's breach of duty proximately caused injury to the client; and
   4. the client sustained actual injury, loss or damage.

*Weiss v. Van Norman*, 1997 S.D. 40, ¶ 11, 562 N.W.2d 113, 116 (*see also Peterson v. Issenhuth*, 2014 S.D. 1, ¶ 17, 842 N.W.2d 351, 355).

This motion challenges the third element a plaintiff must prove to recover in a legal malpractice action. Defendants will also file another motion for summary judgment on Plaintiff's failure to establish proximate cause and anticipate a motion addressing the fourth element, damage in fact, but do not address those two arguments in the instant motion.

2. Mr. Knutson answered Plaintiff's advertisement, and met with Plaintiff on December 18, 2017, and reached an agreement whereby Plaintiff would take possession of the cattle in exchange for the payment of $270,000 (the "Purchase Price"). (*Id*, No. 6).

3. Plaintiff and Mr. Knutson agreed that the first payment towards the Purchase Price would be in the form of a $30,000 check that Mr. Knutson delivered to Plaintiff. (Ex. A, No. 10).

4. Before executing any documents evidencing the sale and before Plaintiff sought Mr. Protsch's legal services, Plaintiff "gave possession of the cattle" to Mr. Knutson. (Doc. 1, ¶ 17).

5. Upon being asked to provide legal advice, only after the sale terms were agreed upon, Mr. Protsch assisted Plaintiff with drafting contracts memorializing the sale, including the Cattle Contract, Promissory Note, and Security Agreement. (*Id.* ¶¶ 13-15).

6. Plaintiff and Mr. Knutson executed these documents on December 30, 2017. *See* Cattle Contract (Exhibit B), Promissory Note (Exhibit C), and Security Agreement (Exhibit D).

7. The Cattle Contract required Mr. Knutson to make a $30,000 down payment to Plaintiff, with Mr. Knutson to pay the remaining balance of $240,200 in annual installments of $30,000 at 5% interest for seven years, when a $92,778.44 balloon payment came due. (Ex. B, No. 1-2, *see also* Ex. C).

8. The $30,000 down payment was deposited into Plaintiff's bank account on December 29, 2017. (Exhibit E).

9. The unpaid balance due under the Cattle Contract was due under the Promissory Note (Ex. C) and secured by the Security Agreement (Ex. D), which granted as much of a security interest in the Cattle as Mr. Knutson could grant at the time of the document's execution. [Doc. 1

at ¶¶ 20, 22].

10.     Mr. Protsch thereafter filed UCC statements with the Secretaries of State for North Dakota and South Dakota on January 2 and 4, 2018 respectively. [Doc. 1 at ¶¶ 20, 22].

11.     At the time Mr. Knutson signed the Security Agreement, all of Mr. Knutson's property, including the cattle, were subject to a prior security interest held by Town & Country Credit Union (TCCU), a North Dakota financial institution, which was dated April 20, 2016 and filed on April 27, 2016, more than a year before the Cattle Contract was executed. [Doc. 1 at ¶ 23].

12.     Plaintiff does not allege any physical manifestation of his alleged emotional distress. [Doc. 1].

13.     Plaintiff is seeking noneconomic damages. (Ex. A, No. 18).

### III.   STANDARD OF REVIEW.

The purpose of summary judgment under Fed.R.Civ.P. 56 is to expedite litigation by avoiding needless trials when no genuine issue exists as to any material fact and the movant is entitled to summary judgment as a matter of law. Summary judgment procedures are favored by the Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). They are an integral part of the whole system which is designed to secure the just and speedy resolution of every action. *Id.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes

demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323. Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Id*. at 325; Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324. Under Rule 56(e), a party opposing summary judgment may not rest solely on the allegations in the pleadings, but must instead go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

A "genuine" fact does not exist simply by the nonmoving party demonstrating some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with evidence significantly probative of its claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986); *see* Fed.R.Civ.P. 56(e). Ultimately, the court must determine if, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586. On motion for summary judgment, therefore, if the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 324; *see Anderson*, 477 U.S. at 249-52.

## IV.  ARGUMENT

### A. Emotional distress damages are generally not reasonably foreseeable and, therefore, not recoverable in a legal malpractice action.

"[A]n attorney is liable in a malpractice action only for losses actually sustained as a proximate result of the conduct of the attorney." *Peterson*, 2014 S.D. 1, ¶ 18.  The requirement that only losses actually sustained as a proximate result of the conduct of the attorney bars recovery of emotional distress damages in most cases, because emotional distress damages are not the reasonably foreseeable result of most types of legal malpractice.  "The majority view among American jurisdictions is that emotional distress is not a reasonably foreseeable consequence of and does not 'naturally ensue' from an act of legal malpractice." *Timmerman v. Eich*, 809 F. Supp. 2d 932, 954 (N.D. Iowa 2011) (citing *Merenda v. Superior Court*, 4 Cal.Rptr.2d 87, 89, 91 (Cal. App. 1992) ("precedent runs strongly against recovery of emotional distress damages in cases of legal malpractice."))*. See also McClain v. Faraone,* 369 A.2d 1090, 1092-94 (Del. Super. Ct. 1977) (emotional distress resulting from loss of residential property was not natural and probable consequence of negligent title search); *Maere v. Churchill,* 452 N.E.2d 694, 697 (Ill. App. 1983) ("Even though real estate is unique and the attorney-client relationship is a fiduciary one, we are unable to conclude that serious emotional disturbance is a particularly likely result of an attorney's breach of contract in his examination of title to real estate.").  "Only in 'special cases involving peculiarly personal subject matters' do the majority of jurisdictions recognize that mental anguish may be a foreseeable damage resulting from attorney negligence." *Timmerman*, 809 F. Supp. 2d at 954.

South Dakota strictly adheres to the rule that awarded damages in a legal malpractice case must be proximately caused by the wrong alleged: i.e., awarded damages must be the reasonably

foreseeable consequence of the act complained of.[2] *See Peterson*, 2014 S.D. 1, ¶ 7. "Proximate or legal cause is defined as a cause that produces a result in a natural and probable sequence and without which the result would not have occurred." *Id.* (internal citations omitted). Put another way, "proximate cause" is defined by the Supreme Court of South Dakota as: "[a]n immediate cause and which, in natural or probable sequence, produced the injury complained of.... Furthermore, for proximate cause to exist, the harm suffered must be found to be a ***foreseeable consequence of the act complained of***." *Weiss*, 1997 S.D. 40, ¶ 13, 562 N.W.2d 113 (emphasis added).

Because emotional distress damages are not the natural or probable result of legal malpractice, "the majority of jurisdictions" conclude that "emotional distress or other non-economic damages resulting solely from pecuniary loss are not recoverable in legal malpractice actions based on negligence." *Aller v. L. Off. of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27 (Colo. App. 2005) (citation omitted). *See also Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 626 (Ariz. App. 1995) ("Simple legal malpractice resulting in pecuniary loss which in turn causes emotional upset, even with physical symptoms, will not support a claim for damages for emotional distress."); R. Mallen & J. Smith, *Legal Malpractice* § 20.11 (5th ed. 2000). Several opinions nationwide, and within the Eighth Circuit, provide helpful guidance in explaining why non-economic damages are not recoverable in legal malpractice lawsuits, particularly those involving an underlying breach of contract matter or where only pecuniary interests are at issue. In

---

[2] In a legal malpractice action, the U.S. Court of Appeals for the Eight Circuit found that the U.S. District Court for the District of South Dakota properly denied a motion for additional time to identify a psychological damages expert on the basis that "under South Dakota law, there was no basis to submit the issues of mental anguish, emotional distress, or loss of lifestyle to the jury in this legal malpractice action." *Justice v. Carter*, 972 F.2d 951, 957 (8th Cir. 1992).

concluding emotional distress damages were not available in a legal malpractice action arising from a bankruptcy proceeding, the Iowa Supreme Court explained:

> Based on our precedents in this area of law and the reasoning of other courts on the subject, we believe that recognition of emotional distress damages as a result of the negligence of a bankruptcy attorney in completing bankruptcy forms would constitute a clear departure from the narrow circumstances in which emotional distress damages have previously been recoverable.
>
> A bankruptcy attorney's duty to competently manage the bankruptcy process ***is not so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering***.

*Lawrence v. Grinde*, 534 N.W.2d 414, 423 (Iowa 1995) (citations omitted, emphasis added). *See also Timmerman*, 809 F.Supp.2d at 954-5 (for "the same reasons that the Iowa Supreme Court rejected emotional distress damages for malpractice of a bankruptcy attorney in *Lawrence*, I now reject such damages in this bankruptcy attorney malpractice case.").

"Reasoning that mental anguish is not generally a foreseeable consequence of an attorney's negligence, and that recovery of economic loss usually suffices to make a plaintiff whole, other courts have concluded that a plaintiff may not recover mental anguish damages when those damages are a consequence of economic loss." *Douglas v. Delp*, 987 S.W.2d 879, 884 (Tex. 1999). *See, e.g.*, *Boros v. Baxley,* 621 So.2d 240, 244-45 (Ala.1993); *Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 627 (Az. App.1995); *Aller v. Law Office of Carole C. Schriefer, PC*, 140 P.3d 23, 26–27 (Colo. App. 2005); *McClain*, 369 A.2d at 1094; *Maere v. Churchill*, 452 N.E.2d 694, 697–98 (Ill. 1983); *Richards v. Cousins*, 550 So.2d 1273, 1278 (La. App. 1989); *Garland v. Roy*, 976 A.2d 940, 948 (Me. 2009); *Selsnick v. Horton*, 620 P.2d 1256, 1257 (Nev. 1980); *Carroll v. Rountree*, 243 S.E.2d 821, 826 (N.C. App. 1978); *Hilt v. Bernstein*, 707 P.2d 88, 95 (Or. App. 1985); *Douglas v. Delp*, 987 S.W.2d 879, 885 (Tex.1999); *Vincent v. DeVries*, 72 A.3d 886, 897

(Vt. 2013) (surveying case law and vacating emotional distress award against attorney who negligence threatened plaintiff with the loss of his home); *see also* R. Mallen & J. Smith, *Legal Malpractice* § 21:19 (2022 ed.) (the general rule is "that damages for emotional injuries are not recoverable if they are a *consequence* of other damages caused by the attorney's negligence or a fiduciary breach that was not an intentional tort." (emphasis in original) (citing cases).

Here, Plaintiff alleges that Defendants failed "to provide competent legal advice that would cause the sale of livestock to be properly allocated to the Plaintiff in a timely manner," failed "to advise Plaintiff regarding sale of cattle under the UCC," and to "advise Plaintiff that they had potentially committed malpractice." [Doc. 1 ¶¶ 31, 34]. Even if these allegations can find support in the facts, which Defendants deny, Plaintiff can only recover "losses actually sustained as a proximate result of the conduct of the attorney." *Peterson*, 2014 S.D. 1, ¶ 18. Plaintiff's alleged emotional distress could not have been proximately caused by the errors allegedly committed by Defendants, so Plaintiff cannot recover emotional distress damages in this case. The Court should enter judgment in favor of Defendants on Plaintiff's claim for emotional distress damages.

B. **Plaintiff cannot argue for an exception to the general rule that legal malpractice cannot proximately cause emotional distress.**

Plaintiff cannot recover under a theory that his "emotional distress" was reasonably foreseeable. "The majority view among American jurisdictions is that emotional distress is not a reasonably foreseeable consequence of and does not 'naturally ensue' from an act of legal malpractice" and, thus, "precedent runs strongly against recovery of emotional distress damages in cases of legal malpractice." *Lawrence v. Grinde*, 534 N.W.2d at 422; *see Wehringer v. Powers & Hall, P.C.*, 874 F. Supp. 425, 429 (D. Mass.), *aff'* sub nom. *Wehringer v. Power & Hall, P.C.*,

65 F.3d 160 (1st Cir. 1995) (holding that a plaintiff fails to state a claim upon which relief can be granted when the plaintiff fails to allege exceptional facts to make emotional distress reasonably foreseeable in a legal malpractice action).

Even in the few cases departing from the general rule that emotional distress damages are unavailable in a legal malpractice action, recovery of noneconomic damages in legal malpractice actions is permitted only under "unusual circumstances" where emotional distress damages are the reasonably foreseeable result of the act complained of. *Gregory & Swapp, PLLC v. Kranendonk*, 424 P.3d 897, 904 (Ut. 2018). "Many jurisdictions do not allow emotional distress damages for legal malpractice unless there has been an intentional act, egregious conduct, or physical injury." *Schmidt v. Coogan*, 335 P.3d 424, 431 (Wash. 2014) (citing *Vincent v. DeVries,* 72 A.3d at 894-95). Other courts allow recovery when a "lawyer is contracted to perform services involving deeply emotional responses in the event of a breach." *Miranda v. Said*, 2012 WL 2410945, at *4, 820 N.W.2d 159 (Iowa Ct. App. 2012), *aff'd*, 836 N.W.2d 8 (Iowa 2013). This has included cases in which "legal malpractice leads to a loss of liberty or of one's child, as contrasted with purely pecuniary loss." *Vincent*, 72 A.3d at 895 (citations omitted). *See, e.g.*, *Ovando v. Cnty. of Los Angeles*, 71 Cal. Rptr. 3d 415, 440 (Cal. App. 2008); *Lawson v. Nugent,* 702 F.Supp. 91 (D.N.J. 1988); *Bowman v. Doherty,* 686 P.2d 112 (Kan. 1984); *see also* Restatement (Third) of the Law Governing Lawyers § 53 cmt. g (2000) ("emotional-distress damages are ordinarily not recoverable when a lawyer's misconduct causes the client to lose profits from a commercial transaction, but are ordinarily recoverable when misconduct causes a client's imprisonment."); *Gautam v. De Luca*, 521 A.2d 1343, 1348-49 (N.J. Super. App. Div. 1987).

Another example of this can be found in *Rowell v. Holt*, where the Florida Supreme Court created a narrow exception that allows a plaintiff to seek noneconomic damages in a legal malpractice action when a harm is grievous and foreseeable. *Rowell v. Holt*, 850 So.2d 474, 479-81 (Fla. 2003). In *Rowell*, the Florida Supreme Court held that a plaintiff could recover emotional distress damages when the client provided his attorney with documentation supporting his immediate release from prison, but the attorney failed to act for ten days, resulting in a lengthy period of wrongful confinement when if the attorney acted the client would have been immediately released. *Id.* at 479. This exception "follows the national trend of allowing emotional distress damages when the attorney's actions are particularly egregious and the harm is both great and foreseeable." *Schmidt v. Coogan*, 335 P.3d 424, 432 (Wash. 2014). In recognizing emotional distress damages in legal malpractice cases should only be available in "extreme cases", courts recognize that "***foreseeability is the touchstone of emotional distress analysis***" in legal malpractice cases where "***generally, the only foreseeable impact on the plaintiff from an attorney's wrongdoing is an economic loss***", in "contrast to medical malpractice cases." *Wehringer v. Powers & Hall, P.C.*, 874 F. Supp. at 429 (citation omitted, emphasis added).

Thus, only in exceptional circumstances (like a client's loss of liberty) will emotional distress damages have a sufficient casual connection to attorney malpractice so as to be an element of a plaintiff's recovery. *See Wagenmann v. Adams*, 829 F.2d 196, 222 (1st Cir. 1987) (allowing the recovery of noneconomic damages in a legal malpractice lawsuit where the attorney's actions resulted in his client's involuntary commitment to a mental hospital). Here there is no wrongful incarceration, wrongful actions directly causing denial of entry into the United States, any physical injury, knowingly providing confidential attorney-client privileged information, or any similar

[13]

conduct. As Plaintiff's alleged emotional distress damages could not have been proximately caused by the wrongs alleged in the Complaint, the Court should enter judgment in favor of Defendants on Plaintiff's claim for emotional distress damages.

**C.     Plaintiff's argument relies on a non-binding case with distinguishable facts and, therefore, is not persuasive.**

Plaintiff's argument that he is entitled to recover emotional distress damages is based on the opinion in *Fix v. First State Bank of Roscoe*, 2011 S.D. 80, 807 NW.2d 612. There, the plaintiff brought claims for abuse of process and intentional infliction of emotional distress. *Id.* ¶ 5. Plaintiff's "abuse of process claim alleged that the [Defendant conspired with the Edmund's County State's Attorney (who was also the Defendant's attorney)] to use the criminal proceeding for the illegitimate purpose of removing her from the house." *Id.* In permitting emotional distress damages for the abuse of process claim, the court in *Fix* relied on SDCL 21-3-1 which permits recovery in non-contract cases of an "amount which will compensate for all the detriment ***proximately*** caused." (Emphasis added). The *Fix* court then stated these damages were available and did not need to meet the "extreme and disabling" threshold because "abuse of process is an intentional tort." *Id.*, ¶ 14.

The opinion of the *Fix* court is consistent with the general rule that emotional distress damages are not available in legal malpractice actions because emotional distress damages are not the natural or probable result of legal malpractice. Emotional distress ***is*** the natural or probable result of using the criminal justice system for ulterior motives. Conversely, emotional distress is ***not*** the natural or probable result of alleged errors in documenting the sale of cattle.

## VI.     CONCLUSION.

Given the facts set out in the Complaint and elicited through discovery, the only damages

available to Plaintiff under South Dakota law are economic.  As such, the Court should enter judgment in Defendants' favor on Plaintiff's claim for emotional distress damages.

    Respectfully submitted this 27th day of September, 2022.

*/s/ Christine M. Kroupa*
Christine M. Kroupa, Esq.
Quintairos, Prieto, Wood, & Boyer, P.A.
216 16th Street, Ste. 1750
Denver, CO 80202
Telephone: 720-798-1620
christine.kroupa@qpwblaw.com
*Attorney for Defendants Greg Protsch and Mumford & Protsch LLP*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the above and foregoing was emailed to all counsel of record, this 27th day of September, 2022.

Robert D. Trzynka, Esq.
Daniel K. Brendtro, Esq.
HOVLAND RASMUS
BRENDTRO & TRZYNKA, PROF.LLC
326 E. 8th Street, Suite 107
P.O. Box 2583
Sioux Falls, SD 57101-2583
bobt@hovlandrasmus.com
dbrendtro@hovlandrasmus.com

/s/ *Christine M. Kroupa*
Christine M. Kroupa, Esq.
Quintairos, Prieto, Wood, & Boyer, P.A.
216 16th Street, Ste. 1750
Denver, CO 80202
Telephone: 720-798-1620
Fax: 720-798-1630
christine.kroupa@qpwblaw.com
*Attorney for Defendants Greg Protsch and Mumford & Protsch LLP*